IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

_____

JEFFERY HANNAN                                    :
                                                  : NO.
        -vs-                                       :
                                                  : CIVIL ACTION
CITY OF PHILADELPHIA                              :
SYLVESTER JOHNSON, KAREN BIRD,                    : JURY TRIAL DEMAND
KAREN SIMMONS, AND WILLIAM BLACKBURN              :
Sued individually and in official capacity,        :
 held liable jointly and severally                :
_____/

COMPLAINT

## I. INTRODUCTION

1. This is a civil action brought under 42 U.S.C. 1983, et seq., and the United States

Constitution; and, the Constitution of the Commonwealth of Pennsylvania and it statutory

provisions. The action seeks compensatory , consequential, actual, and punitive damages, other

related relief, which includes equitable relief, attorney fees, and litigation costs, for the deprivations

of Jeffery Hannan's constitutional, statutory and civil rights, attendant to his employment as a

police officer with the City of Philadelphia, that occurred under color of state law by the below

described conduct of the Defendants.

2.   In this action Police Officer Jeff Hannan contends that he suffered retaliation for the

exercise of free speech and due process rights, and a deprivation of his due process and equal

protection of law, which are protected rights under the Constitution of the United States and the

Laws of the Commonwealth of Pennsylvania and the United States of America. Plaintiff contends

that the defendants acting for themselves, and in a conspiracy, suspended, transferred and direct by

memos and words to others, including members of the District Attorney's Office, that he not work

qualified duties or appear in court and testify for the District Attorneys Office as an Expert,

although he is qualified for the work and capable of performing the work. Specifically, Plaintiff

1

contends that the Defendants directed he be suspended for 15-days from duty without pay and not work on the street, when he was found not guilty of bogus charges of misconduct, which charges were brought by Defendants Johnson and Blackburn, and that he was charged for unspecified misconduct, which he did not commit and was known by the Defendants, or should have been known under the circumstances, to have not been committed by the Plaintiff.

3.   The Defendants' conduct as described above and more fully below was done under color of state law; as all were at the time, as some are know, employees of the City of Philadelphia and their acts deprived Plaintiff federal rights, privileges or immunities, such as reputation; in that he was call by fellow officers as a rapist, which he was not, and the acts cause him to lose property; specifically pay, and due process, in that he was suspended after being found not guilty, which rights are all attendant to his employments as a police officer, and which rights were deprived by the defendants because he exercised his right to testify for the District Attorney officer as a Drug Expert and plead no guilty to a false allegation and charge by the Defendants, and seek a hearing, which process found him not guilty and was entitled to invoke under law without the fear of reprisal and retaliation by the Defendants or others.

4.   Defendants Johnson, Simmons, Bird and Blackburn brought the charges when they knew or should have know the charges were false, unsubstantiated and determined by investigators of the City and its Police Department's investigators, which included Internal Affairs, which upon notice of the event decided no investigation would be conducted by Internal Affairs. The Defendants also reassigned, suspended, transferred, and removed Plaintiff from street duty when they knew or should have known he was found not guilty of the charges, which charges Defendants Johnson and Blackburn caused to be issued against Plaintiff, after he was cleared on wrongdoing and the Department's Prosecution Unit determined charges were not warranted, as was also determined by an investigation. Defendant Johnson further suspended Plaintiff for 15-days after he was found not

guilty, and such was done without any authority of law and in violation of Plaintiff's free speech, due process and equal protection rights. The Defendants conduct was intentional or in done in gross negligent, and/or it was done with deliberate indifference and/or reckless disregard for the Plaintiffs rights, which conduct would shock the consciences. The aforesaid conduct was done under color of law and is the proximate caused of Plaintiff's loss of wages, benefits, promotion, reputation, and family. The conduct caused humiliation, embarrassment, and emotional and physical distress, as well as the loose of association with his wife, who divorced the plaintiff because of the Defendants' conduct. The losses are the result of Plaintiff exercising free speech an due process rights, and the rights deprived were free speech, due process, liberty, property, equal protection, and association, which rights are protected by the United States and Pennsylvania Constitutions are

## II. JURISDICTION

5. Plaintiff repeats here the paragraphs above as if repeated verbatim.

6. Jurisdiction is founded on 28 U.S.C. 1343 (3) and (4), 28 U.S.C. 1331 (Federal Question) and 42 U.S.C. 1983, et seq., this being an action to redress the deprivation under color of any State law, statue, ordinance, regulation or immunity secured by the Constitution of the United States of America providing for equal rights of all persons within the United States and to recover damages under any Act of Congress providing for the protection of civil rights. Supplemental jurisdiction is invoked to resolve the state constitutional and statutory claims.

## III. VENUE

7. Plaintiff repeats here the paragraphs above as if repeated verbatim.

8. Venue is proper herein as the cause of action arose in the city of Philadelphia, Pennsylvania. Pursuant to Local Civil Rule 5.1.1 regarding pleading claims for unliquidated damages, as specifically stated herein, plaintiff seeks compensatory and punitive damages in excess

of the amount which is within the level of arbitration and as such this matter is not subject to arbitration under Local Civil Rule 53.2.

**IV. PARTIES**

9. Plaintiff repeats here the paragraphs above as if repeated verbatim.

10. Jeffery Hannan, Plaintiff, is white and a police officer who commenced his employed with the City of Philadelphia Police Department on March 1, 1993.  For all times relevant to the cause of action he resided in the City of Philadelphia at an address known to the defendants.

11. All individual defendants are or were at the time of the events set forth in the complaint employees of the City of Philadelphia, Defendants Johnson and Blackburn are members of the Philadelphia Police Department and hold or held at the times set forth in the complaint a supervisory rank. Defendant Bird was the aid to the Commissioner for the Police Department, who is Defendant Johnson. Defendant Simmons was for all times when she acted a member of the City Solicitor's Office.  Defendants Johnson and Bird work from the Police Administration Building, 8th and Race in the City of Philadelphia, Blackburn is assigned to Patrol and the 18th District, and Simmons at the time worked fro 1515 Arch Street.

12. The City of Philadelphia, Defendant City, is a City of the First Class in the Commonwealth of Pennsylvania, and at all times relevant hereto operated under color of state law in its creating and maintaining a Police Department and Solicitor's Office. Defendant City was the employer of the Plaintiff and Defendants, and it had the responsibility of adopting polices, implementing procedures and practices that would create a non-discriminatory and harassment free work place and/or that would protect police officers from discrimination, unequal treatment, harassment and retaliation as prohibited by law, rule, regulation and constitutions of the United States and Commonwealth of Pennsylvania.

13. Sylvester Johnson (Defendant Johnson) is a black male, the Commissioner of the Philadelphia Police Department, and he is the successor to Commissioner John Timoney.

14. Commissioners Johnson, defendant Johnson, is a black male and is being sued in his official capacity as high policy maker; he is also being sued individually for his actions and those he directed others to take in his right, two wit, change and file charges against Plaintiff, transfer him, and suspended him or approve the suspension and transfer and charges; although he knew directly that the Plaintiff had not been found after a full hearing to have committed no wrongful act.  At all times relevant hereto Defendant Johnson as the Commissioner is and was responsible for implementation of overall policy, direction, supervision and policy within the Philadelphia Police Department, including but not limited to determining the existence of any conduct which did or would violate the constitutional rights of police officers and developing and implementing conduct which would prevent and remedy such violations.

15.  Karen Bird, defendant Bird, is a black female and the aid to the Commissioner, who is also the person that actually signed the 15-day suspension notice, which caused Plaintiff to be suspended and loose property (wages). Defendant Bird signed the suspension notice after Plaintiff was found not guilty of the charges for which the suspension was issued, and when Defendant Bird signed the suspension notice, she signed the name of Sylvester Johnson, doing so with actual or apparent authority of Defendant Johnson.

16. Karen Simmons, is a black female, and she directed litigation to continue for  the illegal suspension and transfer, although she was told by the City Attorney assigned to the case that the City's witnesses did not wish to proceed, or had not appeared, and litigation was not sought for the illegal suspension, but that the City desired to restore Plaintiff wholly to his standing and position, and to pay lost wages and benefits he enjoyed before the illegal suspension and transfer by Johnson and Bird. The suspension and transfer was litigated on Simmons command and concluded with a

determination on or about May 16, 2005, after two days of hearings, that the suspension and transfer were illegal and done without authority. Plaintiff was awarded all back pay and overtime, as well as an expungement of the illegal suspension and transfer from his employment; however, the City has not paid the overtime or wage loss, nor purged the illegal suspension.

17. William Blackburn, defendant Blackburn, is a black male, who has the rank of Chief Inspector and works in Patrol at the 18th District, and is in Plaintiff's chain-of-command. Defendant Blackburn was aware Plaintiff had reported a false accusation was made against Plaintiff to Capt Broadbent, and that Plaintiff was cleared by the Philadelphia City Police Department of the allegation. Blackburn disapproved the clearance and directed they be reviewed by the Police Department's prosecutors Division; the Police Board of Inquire, specifically Lt. Jackie Daley and Capt. Deborah Mateffey, who reviewed the investigation and disapproved charges. Defendant Blackburn then approved the investigation findings and clearance, as did Commissioner Johnson. Blackburn thereafter went to Commissioner Johnson and the two agreed to have charges filed; despite the investigation results and their concurrence on paper. Charges were brought and the events of such are more fully described below.

**V. MATERIAL FACTS**

18. Plaintiff repeats here the paragraphs above as if repeated verbatim.

19. From 1993 to 2003 Plaintiff was employed by the City of Philadelphia, as a police officer with the City of Philadelphia Police Department; he received excellent evaluation, numerous Awards of Merits, and was held in the highest regard by his peers and supervisors.

20. Plaintiff applied for a position as a police officer with the City of Philadelphia, Department of Police and successfully passed all written, background and other requirements, such as but not limited to a psychological examination; thus, he was selected to attend the City of Philadelphia Police Academy, which in or around 1993 he successfully completed and was sworn in

as a Philadelphia Police Officer. Plaintiff was thereafter in 2003 assigned police duties and he

eventually was assignment to the Narcotic Strike Task Force. Plaintiff at such time earned and was

regarded by the Court of Common Pleas, Philadelphia County, his peers, the Philadelphia Police

Department, and the Philadelphia District Attorney's Office as an expert in drug activities. Plaintiff

also became a "Top Gun" narcotic training instructor for the State.

21. Plaintiff at all times while an employee successfully completed all his duties as a

Philadelphia Police Officer and was regarded as one of the best and highest paid narcotics officers

in the Philadelphia Police Department, which expertise caused him to appear in court to testify as an

expert and earn over the $50,000 base salary thirty to forty thousand dollars a year in overtime.

Plaintiff also received numerous Awards of Merit and Commendations for excellent work, which

were received from persons and members of the City, including Commissioner Johnson.

22. In or around October 20, 2002, Plaintiff was an employee of the City of Philadelphia,

employed as a Police Officer, and working as a STRIKE TASK FORCE narcotics ("NETS") officer

for the City of Philadelphia Police Department; he was at such time also assigned to attend and be

an instructor at the "Top Gun" state narcotics training program located in Fort Indiantown Gap, at

the military facility. While there, he was informed by military personnel of an allegation made

against him, which was false and denied, but he was asked to leave, which he did. Plaintiff before

leaving Fort Indiantown Gap reported the untrue allegation to his supervisor, Capt. Broadbent.

23. Upon Plaintiff's return to work, he was transferred at the direction of Inspector Dorsey

to the PDU, pending the outcome of an investigation into the accusation, which investigation was

initiated upon Plaintiff's report; there was no report by military officials or the accuser.

24. On or about October 28, 2002, Defendant Blackburn advised Plaintiff he would be "all

right but disciplined" because of the accusation; at the time of this comment, however, the

investigation had not been completed.

25. On or about February 3, 2003 Plaintiff was returned to the Narcotic strike Task Force, and advised by Capt Broadbent that "the investigation was done". Thereafter, on or about March 17, 2003, Capt Broadbent advised Plaintiff the investigation was not competed. Plaintiff was informed further that he could choose between a "transfer or eighteens (Charges). Plaintiff understands and believes the choices were only being relayed to him through Capt Broadbent, and that he (Broadbent) had not made the decision to charge or transfer the Plaintiff. Instead, it was defendant Johnson and Blackburn who made such decisions. In any event, Plaintiff advised Broadbent he had done nothing wrong, the accusation was false, and he chose to be charged, and to plead not guilty and have a hearing on the charges.

26. Plaintiff also understands and believes that the investigation had cleared him; that Chief Inspector Blackburn had not approved of the clearance, and had the Department's prosecutors (Lt. Daley and Capt Mateffey) review the investigation. That Daley and Mateffey did not approve charges and reported this to Chief Inspector Blackburn, who then approved Plaintiff's clearance but after doing such a sending the paperwork to Commissioner Johnson for approval, went to Commissioner Johnson, spoke with him to have charges brought and/or Plaintiff fired. The two agreed to bring charges and have Capt. Marvin Burton sign the charges, so the charges did not appear to be initiated by Johnson or Blackburn. Defendant Johnson instructed Deborah Mateffey, to prepare charges against Plaintiff, and a charge was dafted and sent to Johnson for review. Johnson, however, altered the charge to another and directed Lt. Daley and/or Capt. Mateffey to issue the charge he drafted.

27. On or about March 20, 2003 the charge was presented to Plaintiff, who pleaded not guilty and demanded a hearing. Plaintiff was removed from street work and assigned to in-house desk work, such as issuing radios. Plaintiff was ordered reassigned by Inspector Carl Homes, who stated as the reason for the reassignment that "he did not want a rapist on the street".

28.  On June 5, 2003, Plaintiff after two days of hearings was found not guilty of Johnson's and Blackburn's charge.

29. On June 11, 2003, Plaintiff was returned to duty as a Narcotics Strike Task Force Officer. However, Defendant Blackburn ordered Capt Broadbent and Inspector Joseph Sullivan to remove Plaintiff from the assignment, and stated that "the Commissioner [Johnson] has the final say and he is away" Plaintiff was then removed from the Narcotic Strike Task Force duties and not permitted to perform narcotics duties, which he was qualified to perform; thus, he lost additional pay to what had already been lost.

30.  On June 18, 2003, Plaintiff was transferred from Narcotics Strike Task Force to the 18th District. The transfer was effective one minute after midnight on 12/18/03 (which meant the first minute of June 19, 2003).

31. On August 7, 2003, Plaintiff with other police officers was being honored for superior work performed as a police officer. Plaintiff's name, however, was not called until all other awards and accommodations had been presented and the attendants (officers and family and friends) were told they could leave. After the ceremony ended, Defendant Johnson presented Plaintiff with his Award and stood for a photo with the Plaintiff. The event cause great embarrassment and humiliation to be suffered by the Plaintiff, because he had family and friends present to see him receive the award; the act of segregating Plaintiff from the ceremony suggested to others that Plaintiff was guilty of the charge by Commissioner Johnson; although found not guilty, and that the accusation was true, e.g., he was a rapist. Defendants Johnson did nothing to stop the Department grape vine, or clear up the falsehood; instead, he allowed it to continue and bolstered it at the awards ceremony.

32. On or about December 11, 2003 Plaintiff received a 15-day suspension for the charge initiated by defendants Johnson and Blackburn. The suspension notice was signed by Defendant

Bird, and the suspension was issued without authority of law or contract, and after Plaintiff was cleared through a two day hearing process of the charge, which determination was known to Defendants Johnson, Bird, Blackburn and Simmons.

33. Plaintiff requested a hearing on the transfer and suspension.  After two continuances of the hearing process to allow Defendant Johnson to appear and testify, and his failure to appear for the third hearing date, the City and the assigned attorney to prosecute the City's case, wished to end the hearing process and restore Plaintiff in position, pay and standing. Specifically to return him to the Narcotics Strike Task Force, return all lost pay and overtime pay, and expunge from all records the transfer and suspension. However, defendant Simmons refused to allow such and ordered the assigned attorney to proceed with the prosecution and Hearing; despite knowing Johnson had not appeared and the witness accuser did not wishing to go forward.

34. After the Hearing process, on or about May 16, 2005 the transfer and suspension was ruled illegal and the accuser not creditable, which credibility finding was also made in the hearing on the charges brought by Johnson and Blackburn, which tribunal also found Plaintiff not guilty, and which finding came after investigators assigned by the City Police Department to investigate the event completed the investigation and made a determination there was no merit to the accusation and charges should not be brought against the Plaintiff, which determination Johnson and Blackburn was aware. In fact, Blackburn had in writing approved the clearance of Plaintiff; nevertheless, he and Johnson caused bogus and knowing false charges to be initiated, and also caused a retaliatory transfer and suspension. Plaintiff was awarded all back pay and overtime, ordered return and restored to the Strike Task Force, and that all records be expungement of the illegal transfer and suspension; however, Plaintiff has not received the pay or expungement.

35. As a direct and proximate result of the Defendants conduct, the Plaintiff sustained extreme emotional distress that required him to be hospitalized and receive treatment by a

psychiatrist and counselor. Plaintiff's marriage was broken, which caused him to loose an associational right and interfered in his family matters, and he lost overtime pay, promotional opportunities without due process and as retaliation for fee speech activities.

36. Additionally, Plaintiff lost his liberty and right to seek or not seek medical care, when he was ordered to enter a hospital for mental treatment or be commitment under Pennsylvania Mental health Law, section 302. Plaintiff was humiliated by the aforementioned and when his service weapon was taken, and when it was reported to all through Department public records, to wit, a 48, his hospitalization, which act also denied Plaintiff of his privacy and HIPPA rights in medical and private personal information.

37. As a direct and proximate result of the defendants above described conduct, Plaintiff sustained without due process, equal treatment of law, and in retaliation of exercising free speech and due process protected activities,  loss pay in over time and to testify in court when subpoenaed as an expert witness, which is allowed by others ho are similarly situated in experience and education as the plaintiff, who are allowed testify but who have not invoked the right to a hearing on charges, transfers and suspensions that were brought by the Defendants.

38. Upon information and belief the Plaintiff avers that the Defendants' conduct aforementioned was not brought in good faith, there was no probable cause, and was maliciously commenced for a purpose not intended by the process, but to discriminate and retaliate against Plaintiff because of race and protected activities; to wit, Plaintiff is white and the Defendants black, also Plaintiff reported a criminal allegation to the police and invoke due process (a trial) on bogus accusations and charges brought, initiated or continued by the Defendants, and the Plaintiff invoke due process to challenge a reassignment, transfer and suspension, by the Defendants, which processes resulted in findings that the Plaintiff was not guilty of the charge or accusations, and the transfer and suspension were illegal.

39. Upon further belief and information, the Defendants acts were done in concert and in furtherance of an agreed to deprive Plaintiff of constitutional rights, such as property, liberty and reputations. In that Defendants Johnson and Blackburn agreed to bring knowingly false charges against the Plaintiff. Defendant Bird with Johnson initiated a suspension or punishment on the charges that Blackburn and Johnson initiated, after a finding of not guilty, and Johnson and Blackburn transferred and reassigned Plaintiff after the not guilty determinant. Defendant Simmons with Johnson compelled a hearing process to continue; although Johnson failed to appear three times to prosecute the suspension and transfer, and Simmons knew or should have known there was no legal or proper basis to continue, but nevertheless directed the process continued.

40. As a direct and proximate result of the aforementioned actions, the Plaintiff lost property, e.g. wages, benefits, privileges, his reputations and liberty, and placed under considerable distress that has necessitated medical treatment, and which is extreme and outrageous conduct.

41. As a direct and proximate result of the aforementioned actions, the plaintiff's reputation and his career within the Philadelphia Police Department has been adversely affected, since his peers and supervisors now view him as a person who has discipline or supervision problem and an officer who has violated a "code of conduct"" for the Police Department and is mentally unstable or immoral.

42. As a result of the aforesaid actions and other culpable acts of the defendants, Plaintiff has suffered, and will continue to suffer, economic loss, including lost wages, benefits and other work related emoluments, as well as other damages described in this complaint.

43. Upon information and belief, the City of Philadelphia and the Philadelphia Police Department does not have adequate programs and or policies to supervise supervisors, such as Johnson and Blackburn or Simmons, and by policy, practice and custom the City ignores claims of discriminatory conduct by officers, and the City disparately disciplines officers in order to chill their

exercise of constitutional rights. The City has adopted or has tolerated an implicit policy or custom permitting supervisors to use the internal disciplinary process to retaliate against and harass officers, including white officers, who invoke constitutional rights.

44. At all times relevant hereto the City of Philadelphia and Philadelphia Police Department acted with deliberate or reckless indifference, callous disregard, or in an arbitrary and abusive manner as to shock the conscience.

55. At all times relevant hereto all actions taken by the Defendants and against the Plaintiff were performed under color of state law.

46. At all time relevant to this cause of action, the Defendants acted intentionally, negligently, gross negligently, recklessly, purposefully, maliciously, with evil intent, malice, evil and depraved hearts, in and with reckless and/or deliberate indifference to the truth or falsity of the matter or for Plaintiff's state and federal constitutional rights, privileges and immunities, civil rights, and rights as secured under federal and State statutory and constitutional laws, rule and regulations.

47. The Defendants actions were at all times contrary to clearly established law, and done under an illegal policy, practice, custom and agreement, for the design, intent and purpose to harm the plaintiff and deprive him and officers under color of state law of civil rights and right to property, due process, liberty, equal protection of law, and reputation, as secured under the First, Fourth, Ninth and Fourteenth Amendments of the United States Constitution, and under Article I sections: 1, (property, liberty, equal rights, reputation, happiness) 7, (speech) 8, (false arrest/unreasonable seizure) 26 (discriminate in exercise of civil right) of the Pennsylvania Constitution.

**COUNT I**
**Jeffery Hannan v. City of Philadelphia**
**1983 Monell Claim**

48. Plaintiff repeats the above paragraphs as though repeating all verbatim herein, and alleges that the conduct of the defendants were by agreement and done in furtherance of the agreement; that they were continuing conduct done in to achieve a common plan, agreed by word or deed, between one or more of the defendants, who were acting for themselves, others, and under a police custom, practice of the City of Philadelphia and/or its police department that designed and intended to discriminate against officers in employment and retaliate against officers for engaging in law and/or protected activities, including but limited to free speech.

49. At all times relevant to these causes of action the Defendants acted without probable cause, consent of the Plaintiff, privilege or right of law, in bad faith, outrageously, with race being the primary basis for the actions, and/or with notice or constructive notice of the illegality as of their acts, as have been and more fully described.  Further they acted with specific intent to deny civil and constitutional rights, such as but not limited to equal employment.  The defendants discriminated against Plaintiff based on race, and/or retaliated against the Plaintiff for lawful and constitutionally protected activities.

50. Defendant City of Philadelphia Police Department was Plaintiff's employer. Defendants City is a person as defined by 42 U.S.C. 1983 et seq., and related Amendments to the 1952 Civil Rights Act.

51. Plaintiff after reporting an accusation of illegal conduct and invoking due process on an accusation of wrong doing, and after being cleared of wrongdoing by an investigation and even found not guilty on the bogus charges (through the hearing process developed by the City and its Police Department) was  retaliated against because of his race, pleading not guilty, and exercise of due process. Such retaliation and discrimination was by supervisory and management personnel, such as Commission Johnson, and Chief Inspector Blackburn, who are co-defendants and employees of Employer City of Philadelphia Police Department; these defendants with Defendants

14

Bird and Simmons aided and/or furthered the City's illegal policies, procedures and customs as described above to continue.

52. Defendants Johnson, Blackburn, Bird and Simmons through their acts and/or omission, as were more fully described above and below, entered into an illegal agreement with one another to deprive Plaintiff of the terms and conditions of his employment. Specifically, Defendant Johnson approved of, condoned, and/or ratified Birds, Blackburn's Simmons and other unnamed persons' actions as his own, knowing or should have known that these persons had misused their position and authority; unreasonably charged and cause the seizure of the Plaintiff's person, e.g. for him to be transferred and hospitalized, and for his property to be taken, e.g. wages, through an illegal transfer and suspension. The acts were malicious and the prosecution and punishment without a proper basis or creditable evidence to support; instead, the prosecution was upon facts know to be, or should have been known to be, false or fabricated. There was no reasonable belief of criminal or otherwise wrongdoing by Plaintiff, but the Defendants caused Plaintiff to be reassigned, transferred, suspended, and to loose wages, properly, employment opportunities, benefits, liberty, reputation, health, dignity and marital family life, solely because he had engaged only in lawful and constitutionally protected free speech and due process activities.

53.  Defendants Johnson did not take prompt and appropriate action to stop Blackburn, Bird or Simmons, nor did he take any action to punish these defendants for the above described actions. Johnson and/or Blackburn took no action to remedy their action and the memo / order to not allow Plaintiff to appear in court when subpoenaed by the district Attorney to testify as an expert, although, others officers similarly experience and trained, thus situated, as Plaintiff could testify, appear and obey a subpoena, without fear of retaliation or dismissal from the Department.

54. The Defendants acts were the result of a policy of the City, Plaintiff's employer, and the employment practices, policies and customs subjected Plaintiff to a course of conduct which denied

Plaintiff of equal treatment in the terms and conditions of his employment, which is prohibited under 42 U.S.C. 2000e, et seq.

55. Plaintiff believes and therefore avers such treatment was intended to intimidate, chill, retaliate and/or subject the Plaintiff to unequally treat him; that it was to accomplish an illegal purpose, and treat him differently in the terms and conditions of his employment, or to continue the illegal policy, custom and practices afore-described, a policy, practice and custom of the City Defendant to issue the disciplinary rules to retaliate against officers who invoke a right protected under the United States or Pennsylvania Constitution or law.

56. Plaintiff believes and therefore avers the aforementioned conduct as described above was done as a policy to discriminate, retaliate, and created a hostile work environment, so as to force the Plaintiff to leave his employment or chill First Amendment rights to free speech and Fourteenth Amendment right to invoke due process of law and equal protection rights.

57. Defendant City was on actual and/or constructive notice of the reported discriminatory and illegal conduct of its employees, managers and supervisors; yet, and despite numerous complaints failed to take prompt and appropriate action to  stop the offensive, discriminatory, illegal and retaliatory conduct. In that the City has been held to have such a policy to violated police officers First Amendment right through same or substantially similar conduct as has been described by the Plaintiff herein.

58.  The Defendants conduct as describe above is an unlawful practice, which Defendant City Police Department was aware and failed or refused to correct. In that Police Commissioner John Timoney did such against an officer Dooley and Timoney was not discharged. Further Defendant Norris with former police Commissioner Timoney did such to Officer John Devore and Norris was not dismissed or disciplined by Johnson.

59. The Defendants' retaliatory and discriminator conduct against the Plaintiff with respect to his equal treatment, right to be free form unreasonable seizure of his person, compensation, terms, conditions, or privileges of employment, was done because of Plaintiff's protected activities; thereby causing disparate retaliatory, and unequal treatment for lawfully exercising free speech and due process rights.

60. Plaintiff is a member of a protected class, a person making a pubic and private statement on a public concern, to wit; official misconduct by members of the attorney generals office, or corruption in government, and was not guilty of an official accusation of wrongdoing that required loss of property. Plaintiff was qualified for the position he held; to wit, Narcotics Strike Task Force, and he was denied employment and equal terms and conditions of employment because of his activities and membership of a protected class. In that he was denied the right to appear and testify when subpoenaed, and he was transferred and suspended for conduct he had not committed; he was denied pay and opportunities, when others similarly situated but who had not engaged in protected actives were treated more favorably. To wit, other officers, who had been charged and found not guilty of charges, were not suspended, transferred and denied the right to appear in court and testify when subpoenaed, or other employment opportunity.

61. Plaintiff was subjected to retaliation, a hostile work environment, and loss of employment as a policy of the City as result of the intentional discrimination of the defendants who at all times retaliating for the Plaintiff engaging in protected activities.

62. Defendant City of Philadelphia is liable for the acts of defendants Johnson, Blackburn and Simmons, because they are or were all management and/or policy making level employees, with actual or constructive knowledge about the existence of the retaliatory conduct as aforementioned, but who failed to take prompt and adequate remedial action to stop the retaliatory actins, thus

adopting the conduct as a policy of the employer and terms and conditions of employment for the plaintiff.

63. The acts of the defendants, as fully described above, were done because of Plaintiff protected activities, calls membership, and/or fee speech/due process activities. Plaintiff's speech and constitutionally protected activities were a motivating and/or substantial factor in the taking the action by the defendants.

**COUNT II**
**Title 42 Sec. 1983 Civil Rights - Race**

64. Plaintiff repeats the above paragraphs as though repeating them verbatim herein.

65. On or about January 18, 2003 the Defendants while acting under color of state law deprived the plaintiff of rights, privileges or immunities secured by the Constitution, Laws or Regulations of the United States, to which free speech, unreasonable seizure, substantive due process, procedural due process, property, liberty, equal protection of law, and reputation as secured by the First, Fourth, Ninth and Fourteenth Amendment of the United States Constitution.

66. Plaintiff at all times relevant hereto enjoyed the aforementioned rights and right to continual employment as a police officer as his employment is a recognized property interest, as to his pay. The Plaintiff as a City of Philadelphia Police Officer could not be discipline, suspended, reduced in rank or fired without good cause being proven and procedural due process provided him.

67. Plaintiff was suspended, had the term of his employment, and pay removed without good cause or valid procedural due process being provided him. In that, Plaintiff was reassigned, transferred, suspended, and had court time, overtime, or property, and his liberty deprived by the Defendants on false accusation by Defendants Blackburn and Johnson;  the allegations were investigated and shown to be false, the City's Police Prosecution Unit determined there was no wrongdoing, and Plaintiff was found not guilty by the Tirer-of-Facts hearing the charge brought by

Johnson and Blackburn, which charges, like the reassignment, transfer and suspension, were brought for illegal discriminatory and retaliatory reasons.

68. Defendant Johnson and Simmons sanctioned, approved and ratified Blackburn's false accusation of wrong doing, and they, as too Defendant Bird, initiated a suspension for 15-days, and a prosecution competed, without offering him the opportunity to respond to the discipline or rule violation, which he was found not guilty through established due process procedures of the City, before the suspension and prosecution.

69. As a direct and proximate result of the defendants' illegal acts and omission, which were done under color of state law, Plaintiff sustained injury to his good name, reputation in the police community, liberty, and property. Plaintiff suffered loss of employment overtime, health, and his family, which loses and suffering continue to date; although the City was on May 16, 2005 directed by an arbitrator to restore the Plaintiff's pay, overtime, and expunge the record of discipline / suspension.

70.  As a direct and proximate cause of the aforesaid violation of these rights, the plaintiff sustained severe and emotional distress, humiliation, pain and suffering, all of which may be permanent.

71. Plaintiff under 42 U.S.C. 1981, 1983, 1985 and 1988 is entitled to legal and equitable relief for the Defendants above describe acts and omission, which relief includes but is not limited to recovery of lost wages and overtime, reinstated to his position with the police department, and expungement of the Department disciplinary Charge and suspension from the wrongful, retaliatory and discriminatory prosecution. Plaintiff is also entitled to recover compensatory and consequential, exemplary, nominal, special and/or punitive damages, reasonable attorney fees and costs of litigation for the illegal discriminatory conduct of the defendants, or which he seeks all relief the law permits.

**COUNT III**
**42 U.S.C. 1983 – Deprivation of Rights -  Due Process, Equal Protection.**

72. Plaintiff repeats the above paragraphs as though repeating all verbatim herein.

73. For the conduct and omission describe above, done under color of state law, which deprived Plaintiff of federal rights, privileges and immunities as secured by the United States Constitution; to wit, First, Fourth, and Fourteenth Amendments, the Plaintiff is entitled to relief under 42 U.S.C. 1983 for a deprivation of his First amendment right to engage in protected activities and not be retaliation for engaging in protected free speech and due process activities; being subjected to an unreasonable seizure of his person an forced medical acre, having personal medical information disclosed, being deprived of his property without due process and/or reasonable compensation; and, being subjected to malicious and/or abusive or retaliatory prosecution; whereas there is no probable cause; and, being treated unequal in the terms and conditions of his liberty and property, such as being suspended after being cleared of wrongdoing but punished through a suspension, transfer, and striping of a right to appear in court and testify for the District Attorney, nevertheless, when other officers who are found not guilty by a tribunal, or similarly situated, are permitted.

**Count IV**
**Title 42 sec. 1985 Civil Rights - (Conspiracy)**

74. Plaintiff repeats the above paragraphs as though repeating all verbatim herein.

75. The Defendants collectively, by agreement, and/or for a common goal, took overt acts to put into motion a plan designed to retaliate for protected activities and to deprive Plaintiff of his property, liberty and reputation, and to do so without providing proper or adequate due process of law, and/or equal treatment under the law, instead to treat him unequally and differently than others similarly situated, because of his race or engaging in protected activities.

76. Defendants Johnson and Blackburn furtherance of the conspiracy and as an overt act initiate charges against Plaintiff and directed others to sign their names to the charges. Johnson and

20

Blackburn caused Plaintiff to be transferred, removed from street duty, suspend without pay for 15-days and to be barred from appearing in court and testifying for the District Attorney's Office as a Narcotics Expert.

77. Bird in furtherance of the conspiracy, and as an overt act, signed for the Johnson the paperwork to start Plaintiff's 15-day suspension.

78. Blackburn in furtherance of the conspiracy, and as an overt act, directed Capt Wiley and Inspector Joseph Sullivan of the 18th District to remove Plaintiff for street duty, until the Commissioner Johnson approved the return to work, and Blackburn directed the 18th District's "NET" (narcotics team) to be reduced; after issuing that order, Blackburn inquired if Plaintiff was among those reassigned.

79. Johnson with Simmons's, in furtherance of the conspiracy and as an overt act, continued litigating the transfer and suspension grievance, although Johnson failed to appear three times, issued the suspension after and in retaliation of the not guilty determination, and Simons knowing or should of the not guilty determination and retaliatory suspension and transfer thereafter, directed the prosecution to continue; although, the assigned attorney to prosecute the case contacted her and was seeking to end the litigation and restore the Plaintiff's pay and positions.

80. As a direct and proximate result of the illegal conspiracy Plaintiff suffered injury to his property, person and reputation, to wit, loss of employment pay benefits, and health. Plaintiff was denied rights, privileges or immunities as secured under the United States Constitution, Laws and/or Regulations; to wit, speech, property and liberty as secured by the First, Fourth and Fourteenth amendments, and his personal private medical information was disseminated, and he lost his marriage and the companionship of his wife, who divorced him.

81. The Defendants at all time were acting in concert with one another and were motivated by a animus, which continues to date, for the Plaintiff having engaged in protected free speech and due process activities.

**COUNT V**
**Pursuant To 42 U.S.C. 1983 - Retaliation**

82. Plaintiff repeats the above paragraphs as though repeating all verbatim herein.

82. Plaintiff's complaint and report concerning a member of the state attorney general improper allegations and conduct, and the election to defend against illegal suspensions and/or improper charges, which the Plaintiff was not guilty and so found, and to testify in court when subpoenaed by the District Attorney's office, concerned important issues of public interest that are or were protected by the First and Fourteenth Amendments to the Constitution of the United States.

83. The Defendants deprived him of his constitutional rights as guaranteed by law. In that, the conduct of the Defendants, and those unnamed or named that were acting for them, caused Plaintiff's losses as aforementioned, which losses were done without and contrary to proper or adequate due process. The Defendant's initiation of a prosecution was without legal cause, as was the imposition of a 15-day suspension, transfer, and order to not appear in court and testify for the District Attorney as an expert. The aforementioned conduct was without legal cause and was intended to punish Plaintiff and retaliate against him for exercising his rights and duties under the First and Fourteenth Amendments to the Constitution of the United Stated.

84. The substantial motivating reason for the charges, prosecution, suspension, transfer, and bar to appear in court or the District Attorney as an expert was the Plaintiff's protected activities of a pubic concern. The suspension, transfer, and bar to appear in court for the District Attorney as an expert, was intended to punish the plaintiff for protected activities. The defendants actions were illegal, retaliatory, and done because Plaintiff's exercised his rights and duties under the First and Fourteenth Amendments to the United States and commonwealth of Pennsylvania Constitutions.

85. The Defendants conduct was arbitrary, capricious, reckless and intentional conduct, and as a direct and proximate result of this wrongful conduct and aforementioned conspiracy the Plaintiff was deprived of federal rights, privileges and immunities, and he suffered the loss of income and other benefits attendant to his job, and humiliation, embarrassment and emotional distress.

86. Defendant City of Philadelphia is liable for the wrongful conduct of Johnson and Simmons as they are decision makers who can implemented  policy and practice, such as was done here; to wit, used internal discipline and reporting systems to retaliate against officers who exercised First and Fourteenth Amendment Constitutional rights.

87. Defendant City of Philadelphia is liable for the wrongful conduct of the named defendants and decision makers, who were permitted to continue and condoned a longstanding policy and practice of using the internal discipline and reporting system to retaliate against officers who exercised First Amendment and Whistleblower rights.

88. As a result of Defendant's wrongful conduct, plaintiff suffered the harm and damages averred to above.

**COUNT VI**
**Pendent State Claim - Pendent Jurisdiction invoked**
**Intentional Infliction of Emotional Distress, Mental Anguish**

89. Plaintiff repeats the above paragraphs as though repeating all verbatim herein.

90. As a result of the Defendants conduct or omissions Plaintiff suffered fright, nervous shock, mental or emotional disturbances and/or distress which was accompanied by physical injury or impact to include but not limited to up set stomach, irritability, mood swings, depression, shakes, loss of sleep, appetite, and muscle twitches.

91. Defendants' actions and omissions were done with the intent to inflict emotional distress and was extreme or clearly outrageous conduct.

92.  Defendants conduct and/or omission was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be viewed and regarded by an ordinary prudent person as atrocious and utterly intolerable in a civilized community.  Defendants conduct would cause in an average member of the community the arousal of resentment against the employer and/or them, or any actor, and lead them and society to exclaim the conduct as outrageous.

93. Plaintiff's symptoms are severe and include depression, nightmares, stress and anxiety, requiring psychological treatment, and/or mental, physical, and emotion counseling.

94. Defendants' outrageous conduct and nature demonstrates intentional, willful, wanton or reckless conduct, so outrageous as to support a claim for intentional infliction of emotional distress and punitive damages.

95. Defendants outrageous conduct caused such harm to Plaintiff as to cause a separation and divorce with his wife.

PRAYER FOR RELIEF

Wherefore, the plaintiff prays the Court enter Judgment for him and against the Defendants on all counts, hold the Defendants jointly and severely liable, and award Plaintiff back and front wages, economic, statutory, compensatory, punitive and exemplary damages, provide injunctive and/or equitable relief, award attorney fees, costs, and other relief just and proper or the court deems fitting and just to make the Plaintiff whole.

Respectfully submitted
KRAVTIZ AND PURICELLI

Dated: June 12, 2005

BY:

Brian M. Puricelli. Esquire

ECF BMP3198
PA. Atty ID No. 61933
691 Washington Crossing Road
Newtown, Pa. 18940
(215) 504-8115